**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ADARUS MAZIO BLACK,

   Plaintiff

     v.

U.S. DEPARTMENT OF JUSTICE, *et al*,

   Defendants.

**Civil No. 13-1195 (CKK)**

---

**MEMORANDUM OPINION**
(September 23, 2014)

Plaintiff Adarus Mazio Black submitted a Freedom of Information Act ("FOIA") request with the Executive Office for U.S. Attorneys ("EOUSA") seeking all criminal files possessed by the EOUSA referencing Aida Prendushi and all tape recordings and wiretaps which reference Ms. Prendushi or Ms. Prendushi speaking to "John Beason, Waad Murad, Joey Murad, David White, Joe Hermosillo, Case No. 06-CR-20385-MOB-SDP-1, Undercover Agents, and Reginald Coleman." Def.s' Ex. A, ECF No. [22]. Dissatisfied with the agency's refusal to search for responsive documents pursuant to the Privacy Act, 5 U.S.C. § 552a, and FOIA Exemptions 6 and 7(C), Plaintiff filed suit against the Department of Justice and the EOUSA on August 2, 2013. Presently before the Court is Defendants' [22] Motion to Dismiss or, in the alternative, for Summary Judgment and Plaintiff's [29] Cross-Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the

---

[1] Def.s' Mot. to Dismiss or, in the alternative, for Summ. J. ("Def.s' Mot."), ECF No. [22]; Decl. of David Luczynski ("Luczynski Decl."), ECF No. [22-3]; Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mot."), ECF No. [29]; Pl.'s Opp'n. to Def.s' Mot. ("Pl.'s Opp'n."), ECF No. [31]; Def.s' Opp'n, to Pl.'s Cross-Mot. for Summ. J. and Reply to Pl.'s Opp'n. ("Def.s'

Court finds that Defendants have properly invoked Exemption 7(C) to justify their refusal to conduct a search in response to Plaintiff's FOIA request. Accordingly, Defendants' [22] Motion to Dismiss or, in the alternative, for Summary Judgment is GRANTED and Plaintiff's [29] Cross-Motion for Summary Judgment is DENIED.

## I.      BACKGROUND

Plaintiff Adarus Mazio Black was convicted on May 29, 2009, in the Eastern District of Michigan, Detroit Division, of Conspiracy to Distribute and Possession of Cocaine and Marijuana for Intended Distribution, 21 U.S.C. §§ 841, 846. By letter dated February 27, 2013, Plaintiff submitted a FOIA request for:

> All criminal files which in any fashion reference the name of the person, "Aida Prendushi" with the U.S. Attorney's Office in Detroit, Michigan, Los Angelos [sic], California, and the Southern District of New York. I am requesting all tape recordings and wire taps (or the transcribed equivalents) which in any fashion reference "Aida Prendushi" in them. I am further requesting all tape recordings, wire recordings which involve or reference Aida Prendushi, speaking to John Beason, Waad Murad, Joey Murad, David White, Joel Hermosillo, Case No. 06-CR-20385-MOB-SDP-1, undercover agents and Reginald Coleman.

Def.s' Ex. A, ECF No. [22-4]. By letter dated April 8, 2013, the EOUSA responded to Plaintiff informing him that since his entire request was for records concerning third parties, those records could not be released without "express authorization and consent of the third party, proof that the subject of [the] request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the

---

Opp'n."), ECF No. [34]; Pl.'s Reply to Def.s' Opp'n. to Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. [37]; Def.s' Supp. Mem. ("Def.s' Supp."), ECF No. [48]; Supp. Decl. of David Luczynski ("Supp. Luczynski Decl."), ECF No. [48-1]; Pl.'s Supp. Reply ("Pl.'s Supp. Reply"), ECF No. [50]. Shortly after filing his Cross-Motion for Summary Judgment and his Opposition to Defendants' Motion, Plaintiff also filed a document entitled "Motion to Compel Production of a *Vaughn* Index." The Court let this document be filed as part of Plaintiff's Cross-Motion for Summary Judgment, not as a separate motion. *See* ECF No. [33].

disclosure of the requested records."  Def.s' Ex. B, ECF No. [22-4].  The EOUSA concluded that since Plaintiff had not provided any of the above information, "the release of records concerning a third party would result in an unwarranted invasion of personal privacy and be in violation of the Privacy Act, 5 U.S.C. § 552a."  *Id.*  The EOUSA also categorically denied the request pursuant to sections (b)(6) and (b)(7)(C) of the FOIA, 5 U.S.C. § 552.[2]  *Id.*  Plaintiff appealed the denial of his request to the Office of Information Policy ("OIP") on or around April 23, 2013. *See* Def.s' Ex. C, ECF No. [22-4].  OIP affirmed the EOUSA's refusal to conduct a search for the requested records finding that "any responsive request would be categorically exempt from disclosure" pursuant to Exemption 7(C).  Def.s' Ex. E, ECF No. [22-4].

On August 2, 2013, Plaintiff filed suit in this Court against the U.S. Department of Justice and the EOUSA.  Defendants moved the Court to dismiss this case or, alternatively, to enter summary judgment in Defendants' favor on December 17, 2013.  On February 26, 2014, Plaintiff filed a Cross-Motion for Summary Judgment.

Defendants move the Court to dismiss this case or, alternatively, to enter summary judgment in Defendants' favor, arguing that Defendants properly refused to conduct a search for responsive documents pursuant to FOIA Exemptions 6 and 7(C).  Plaintiff cross-moves the Court to enter summary judgment in his favor, arguing that Defendants improperly invoked Exemption 7(C).

---

[2] The Luczynski Declaration which was submitted with Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment gives a justification for the non-disclosure of Plaintiff's requested records under the Privacy Act, in addition to a justification under FOIA. However, in their Motion, Defendants only rely on FOIA Exemptions 6 and 7(C) to withhold the documents requested by Plaintiff, they do not rely on the Privacy Act. Nor does Plaintiff challenge the Luczynski Declaration's invocation of the Privacy Act in his briefing. Accordingly, the Court shall focus its analysis on the applicability of FOIA Exemptions 6 and 7(C).

On June 24, 2014, the Court issued a Memorandum Opinion and Order holding in abeyance the parties' motions because the Court found it could not resolve the cross-motions without further briefing.  *See* ECF No. [39].  As Defendants did not respond to Plaintiff's argument that the records he requested must be disclosed because they are in the public domain, the Court ordered Defendants to file supplemental briefing addressing whether Plaintiff had made a sufficient argument for applying the public domain doctrine to his FOIA request and whether all or any portion of the information requested by Plaintiff is actually in the public domain.  In addition, since Defendants did not provide any information as to whether the third parties in Plaintiff's FOIA request are alive or dead and did not explain any efforts Defendants had undertaken to ascertain that information, the Court ordered Defendants to provide supplemental briefing addressing the efforts they have made to ascertain the third parties' life status and any information they have regarding the third parties' life status.  The Court received Defendants' Supplemental Memorandum on August 29, 2014.  Plaintiff was afforded an opportunity to respond to Defendants' argument about Plaintiff's invocation of the public domain doctrine.  Plaintiff filed a response on September 12, 2014.  As the Court finds that both motions are now fully briefed, this matter is ripe for review.

## II.     LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation and internal quotation marks omitted).  Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)

(citation omitted) (internal quotation marks omitted), cert. denied, 507 U.S. 984 (1993).  To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material."  *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1261-62 (2011).  Ultimately, "disclosure, not secrecy, is the dominant objective of the Act."  *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 131 S.Ct. at 1262 (citations and internal quotation marks omitted).

When presented with a motion for summary judgment in this context,[3] the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA."  *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request.  5 U.S.C. § 552(a)(4)(B).  "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific

---

[3] Defendants style their Motion as a motion to dismiss or, in the alternative, for summary judgment.  As both parties' briefs rely on documents outside the Complaint, notably declarations from David Luczynski, Attorney Advisor with the EOUSA, and several transcripts and letters from a criminal proceeding, the Court will treat Defendants' motion as a Motion for Summary Judgment.  *See Highland Renovation Corp. v. Hanover Ins. Group,* 620 F.Supp.2d 79, 82 (D.D.C. 2009) ("When 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b)(6), 'the motion must be treated as one for summary judgment[.]' ").  The Court also finds that neither party will be prejudiced by the Court's treatment of Defendants' Motion as a motion for summary judgment as both parties have treated Defendants' Motion as a motion for summary judgment, providing the Court a statement of material facts and an opposing statement of material facts.  *See* Pl.'s Opp'n. at 20.

detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  With these principles in mind, the Court turns to the merits of the parties' motions.

## III.   DISCUSSION

Defendants seek summary judgment on the grounds that the agencies properly refused to conduct a search for responsive documents pursuant to FOIA Exemptions 6 and 7(C).  FOIA Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Similarly, Exemption 7(C), in relevant part, permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C). "The courts have construed this provision as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine*, *Wash. Bureau v. U.S. Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995).  As the Plaintiff does not dispute the fact that the records at issue

in this case were compiled for law enforcement purposes as required for Exemption 7(C), the Court has "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Defendants provide a declaration from David Luczynski, Attorney Advisor with the EOUSA, explaining that Defendants properly refused to search for the records requested by Plaintiff because Plaintiff's request exclusively concerns third-party information and Plaintiff did not provide third-party authorization of the release of the requested records, proof that the third party is deceased, or otherwise show that the public interest in disclosure outweighs the personal privacy interest of the third party. Luczynski Decl. ¶¶ 5, 12. Specifically, Defendants contend that they did not need to conduct a search because "all the tape and wire recordings of third party witnesses were compiled for law enforcement purposes concerning the prosecution of the Plaintiff" and the release of the identities and personal information about these third party individuals could subject such persons to an unwarranted invasion of their personal privacy, especially in light of the underlying conviction of narcotics distribution, "which is a serious crime that often encompasses acts of violence and harm to those involved." Def.s' Mot. at 15; Luczynski Decl. ¶ 11. Defendants further explain that they "also applied this exemption to withhold the identities of individuals such as special federal agents, other government employees, and local law enforcement personnel all of whom participated in the investigation and prosecution of this case" because the "release of this information would seriously jeopardize future investigations as their voices and other personal information would be known to the public." Def.s' Mot. at 15.

In response, Plaintiff argues that (1) no FOIA exemption can be invoked in this case

because the records sought were previously publicly disclosed; (2) Defendants have not conducted a reasonable search because they have not made a determination as to whether the putative beneficiaries of the 7(C) exemption are alive or dead; (3) Exemption 7(C) was not properly invoked because the public interest in disclosure of these documents outweighs any privacy interests; and (4) Defendants' invocation of Exemptions 6 and 7(C) cannot be upheld without Defendant first producing a *Vaughn* index.  Plaintiff also requests limited discovery "in order to properly present certain arguments."  Pl.'s Mot. at 4.  As Defendants indicate in their supplemental briefing that they were able to determine that Aisha Prendushi is alive, Plaintiff's second argument is now moot.[4]  The Court shall address each of Plaintiff's remaining arguments in turn.

### A.  Previous Public Disclosure

Plaintiff contends that Defendants cannot properly withhold any documents responsive to Plaintiff's request because the information he seeks is already in the public domain.  Specifically, Plaintiff alleges that the records he seeks were previously publicly disclosed "both in open court and as a formal pleading for mitigating purposes via a supplement to the Capitol [sic] Case

---

[4] Despite the Court's clear instruction to Plaintiff to exclusively respond to Defendants' public domain argument in his Supplemental Reply, Plaintiff also used the reply to challenge the manner Defendants went about determining that Aida Prendushi is alive.  In light of Plaintiff's *pro se* status, the Court will consider Plaintiff's additional argument.  Plaintiff argues that Defendants should have used the Social Security Death Index or applied the 100-year-rule (presuming individuals born more than 100 years ago are deceased) to Ms. Prendushi's date of birth to determine her life status.  Pl.'s Supp. Reply at 9-10.  The government was required to conduct a reasonable search to determine Ms. Prendushi's life status.  *See Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) ("In undertaking [the balancing of public and private interests], a court must assure itself that the Government has made a reasonable effort to ascertain life status.").  The Court finds that Defendants conducted a reasonable search by contacting the probation officer to whom Ms. Prendushi reported and, upon learning that Ms. Prendushi had been deported, confirming her life status with one of her regular associates in the United States whose contact information was provided by the probation office.  *See* Supp. Luczynski Decl. ¶ 1-2.

Committee during the death penalty certification process." Pl.'s Opp'n. at 13-14. Plaintiff focuses on an audio/video tape recording from October 12, 2004, which he claims was entered into the public record and was responsive to his FOIA request. *Id.*

"Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). "A plaintiff asserting a claim of prior disclosure" has the burden of production, and it "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). "[T]o obtain portions of tapes alleged to be in the public domain, [the FOIA applicant] has the burden of showing that there is a permanent public record of the exact portions he wishes." *Davis v. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992). "This is so because the task of proving the negative—that information has *not* been revealed—might require the government to undertake an exhaustive, potentially limitless search." *Davis*, 968 F.2d at 1279. The Court will not invoke the public domain doctrine, where a plaintiff fails to meet his burden. *Muslim Advocates v. Dep't of Justice*, 833 F. Supp. 2d 92, 102 (D.D.C. 2011). The ultimate burden of persuasion, however, remains with the government. *See Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 342 (D.C. Cir. 1989); *see also Cottone*, 193 F.3d at 552 (holding that "unless the government can rebut such a specific showing by demonstrating that the recordings have since been destroyed or otherwise removed from the public record, they must be released under FOIA"); *Davis*, 968 F.2d at 1280 (holding that should a requester be unable to "establish that the material he seeks is in the public domain, the government, to continue withholding the information, still must prove that it falls within a statutory exemption.").

Defendants contend that Plaintiff has failed to meet his burden of production in order to invoke the public domain doctrine.  Defendants argue that Plaintiff's vague allegations that some of the tapes were previously played in court do not suffice to shift the burden to the government.  Instead, Defendants argue, Plaintiff needs to show that there is a permanent public record of the exact portions of the tape that Plaintiff requests.

The Court agrees that Plaintiff has failed to meet his burden of production and thus cannot invoke the public domain doctrine.  Plaintiff alleges that the requested tape/video recordings were publicly disclosed in another criminal case "both in open court and as a formal pleading for mitigating purposes via a supplement to the Capitol [sic] Case Committee" and has attached to his Opposition and his Supplemental Reply court transcripts and a letter to support this allegation.  However, Plaintiff ultimately fails to point to specific information identical to that being withheld that has been placed in the permanent public record.  *Afshar*, 702 F.2d at 1130.  Apparently as evidence that the tape/video recordings were publicly disclosed in open court, Plaintiff attaches transcripts from the plea and sentencing hearings of Christopher Perez. Pl.'s Opp'n. Ex. F (Plea and Sentencing Transcript), ECF No. [31-1].  In the transcript, the attorneys arguing before the court reference the October 12, 2004, recordings and present their respective characterizations of the content of the recordings.  However, at no point does the transcript—which documents the entire plea and sentencing hearings—reflect that any portion of the recordings were played in court or that the actual content of the recordings were otherwise entered into the public record.  In addition, Plaintiff attaches a letter written by Christopher Perez's attorney to the prosecutors in Perez's case in which Perez's attorney references having received and listened to the recordings himself and then characterizes the contents of the recordings.  Pl.'s Opp'n. Ex. G (Goltzer Letter), ECF No. [31-1].  In addition to there being no

evidence that this letter was ever entered into the public record, the simple reference to the recordings and characterization of the recordings' content do not suffice to show that "specific information" "that appears to *duplicate* that being withheld" has been placed in the permanent public record. *Afshar*, 702 F.2d at 1130 (emphasis added). Plaintiff is seeking disclosure of the actual content of the recordings and none of the documents he attaches show that the actual content of the recordings was ever entered into the public record.[5] In his Supplemental Reply, Plaintiff also attaches a press release about Perez's case from the U.S. Attorney's Office for the Southern District of New York and several news reports repeating the language of the press release. *See* Pl.'s Supp. Reply at 27-32. Plaintiff also attaches an affidavit recently submitted in the United States District Court for the Eastern District of Michigan by one of his attorneys in his criminal trial. *Id.* at 33-35. Although these documents show that the existence of the requested tapes has been referenced in the public domain, they in no way indicate that any portion of the content of the tapes themselves has been entered into the public record. Accordingly, Plaintiff has failed to meet his burden for invoking the public domain doctrine. *See Davis*, 968 F.2d at 1280 (holding that Davis had the burden of showing that the exact portions of the recordings he

---

[5] In Plaintiff's Reply in support of his Cross-Motion for Summary Judgment, Plaintiff alleges that he found additional evidence that a "complete portion" of the October 12, 2004, audio/video tape recordings entered the public records which he claims to attach to his Reply as "Exhibit A." Pl.'s Reply at 13. "Exhibit A" consists of two letters between Perez's attorneys and prosecutors, two affidavits by Christopher Perez, an addendum to Plaintiff Black's presentence report, and several discovery-related motions from Plaintiff Black's criminal proceedings. *Id.* at 22-43. The Court has reviewed these documents and finds that none of them contain a "complete portion" of the October 12, 2004, recording or any recording. At most, these documents contain references to the October 12, 2004, recording and other recordings and a characterization of the contents of the recordings, which the Court has already established is insufficient for Plaintiff to meet his burden of production to be able to invoke the public domain doctrine.

requested had previously been played in court).[6]

## B. Exemption 7(C)

Under Exemption 7(C) of the FOIA, the government may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The exemption protects several classes of individuals, including third parties mentioned in law enforcement records who have provided information to law enforcement authorities. *See Nation Magazine, Wash. Bureau*, 71 F.3d at 896 (explaining that "subjects, witnesses, or informants in law enforcement investigations" are protected under 7(C) (citing *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991))). However, when the FOIA requester demonstrates a public interest that is sufficient to overcome the privacy interest at stake, the government may be required to disclose the information. *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989). "[C]ourts in this Circuit have consistently held that where an individual seeks law enforcement records that implicate the privacy interests of a third party, the requester bears the burden of asserting the public interest at play." *Graff v. FBI*, 822 F. Supp. 2d 23, 33 (D.D.C. 2011). The requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2)

---

[6] To the extent that Plaintiff is invoking the public domain doctrine based on the disclosure of the recordings to Perez's attorney—a fact reflected in the letters Plaintiff attaches to his Opposition—this limited "public" review is insufficient to satisfy the requirements of the public domain doctrine because there is still no "permanent public record" of the content of the recordings. *See Students Against Genocide v. Dep't of State,* 257 F.3d 828, 836 (D.C. Cir. 2001) (finding that there was no "permanent public record" of photographs which were not released to the general public but only displayed to the Security Council delegates and did not leave the U.N. chamber).

must show the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.' " *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm.*, 489 U.S. at 773). When the requester advances revealing government misconduct as the relevant public interest, the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. For the public interest to prevail, the requester must provide "*compelling* evidence that the agency is engaged in illegal activity." *SafeCard Services, Inc.*, 926 F.2d at 1205-06 (emphasis added).

Defendants contend that the requested records are exempt from disclosure because disclosure would result in the unwarranted invasion of third parties' privacy, specifically Aida Prendushi's privacy. Defendants claim that because Ms. Prendushi's testimony was used in convicting Plaintiff of narcotics distribution, and because narcotics distribution is a serious crime often involving violence, disclosure of the requested records could result in significant harm to Ms. Prendushi. Def.s' Mot. at 15. Since death can diminish one's privacy interest, the Court requested that Defendants provide proof of Ms. Prendushi's life status. On August 29, 2014, Defendants provided the Court with a declaration confirming that Ms. Prendushi is alive. Supp. Luczynski Decl. at 1-2. Accordingly, the Court finds that Defendants have established a compelling privacy interest.[7]

---

[7] In his Supplemental Reply, Plaintiff argues for the first time that Defendants have failed to prove that Ms. Prendushi has a protected privacy interest because they have not provided the Court with Ms. Prendushi's nationality. Pl.'s Supp. Reply at 11. Plaintiff contends that "only United States citizens enjoy the privacy protections of the Privacy Act." *Id.* Despite the Court's clear instruction to Plaintiff to exclusively respond to Defendants' public domain argument in his Supplemental Reply, the Court will consider Plaintiff's additional argument in light of Plaintiff's

Plaintiff argues, however, that this privacy interest is outweighed by the public interest in disclosure of the requested documents and that, accordingly, the government is improperly invoking Exemption 7(C).  Plaintiff alleges that the requested records are relevant to the public's interest in understanding government operations and discovering prosecutorial misconduct. Specifically, Plaintiff contends that the records will show that the United States Attorney's Office for the Eastern District of Michigan, Detroit Division ("Michigan USAO") withheld "favorable exculpatory material in its possession, even after being reprimanded by the U.S. Attorney General for said type of illegal, unethical and unprofessional conduct."  Pl.'s Reply at 3-4.  Plaintiff points to two cases which reference prior investigations into prosecutorial misconduct in the Eastern District of Michigan and a Senate report detailing prosecutorial misconduct in the prosecution of former Senator Ted Stevens.  Plaintiff argues that the public has an interest in knowing that the Michigan USAO continued to engage in prosecutorial misconduct by committing a *Brady* violation in the prosecution of his own case. The Court finds that Plaintiff has failed to present "compelling evidence that the agency is engaged in illegal activity" or activity with which the public would be concerned.  *SafeCard Services*, 926 F.2d at 1205-06.

Even assuming Plaintiff has presented sufficient evidence to "warrant a belief by a

---

*pro se* status.  Regardless of the application of the Privacy Act to non-citizens, it is undisputed that the records Plaintiff requested pertain to criminal investigations and are materials that were compiled for law enforcement purposes.  United States Attorney's Office criminal case files are exempt from the Privacy Act's access provisions pursuant to 28 C.F.R. § 16.81(a)(1). Defendants set forth the applicability of this Privacy Act exemption in the Luczynski Declaration, *see* Luczynski Decl. at 3-4, and Plaintiff does not challenge this exemption anywhere in his briefing.

Even if the Court were to generously read Plaintiff's new argument as applying to FOIA 7(C) privacy protections, "courts have determined that foreign nationals are entitled to the privacy protections embodied in FOIA."  *Graff*, 822 F.Supp.2d at 33-34 (applying Exemption 7(C) to protect the privacy interests of a foreign national and citing cases applying FOIA to protect privacy interests of foreign nationals).  Accordingly, the Court rejects Plaintiff's additional argument.

reasonable person that the alleged Government impropriety might have occurred,"[8] *Favish*, 541 U.S. at 159, case law in this Circuit is clear that simply seeking to expose a single *Brady* violation "would not serve the FOIA's purpose of showing 'what the Government is up to.' " *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (quoting *Reporters Comm.*, 489 U.S. at 780), *vacated & remanded*, 541 U.S. 970, *on remand*, 378 F.3d 1115 (D.C. Cir. 2004) (reaffirming prior decision); *see also Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("[A] single instance of a *Brady* violation in Boyd's case would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake."); *Lewis v. Dep't of Justice*, 609 F.Supp.2d. 80, 85 (D.D.C. 2009) ("It is established, however, that the public interest in disclosure, 'does not include helping an individual obtain information for his personal use' to overturn a conviction" (quoting *Oguaju*, 288 F.3d at 450)).

Plaintiff appears to attempt to circumvent this well-established case law by arguing that the public has an interest in the alleged *Brady* violation in his case because it will establish that the Michigan USAO continued to engage in prosecutorial misconduct even after previously being investigated and reprimanded for misconduct. Pl.'s Reply at 3-4. In other words, Plaintiff appears to argue that the requested records will reveal a systemic pattern of misconduct within the Michigan USAO. *Id.* at 4. Apparently as evidence of this previously established pattern of prosecutorial misconduct, Plaintiff points to the Schuelke Report, a report regarding the investigation into prosecutorial misconduct in former Senator Ted Stevens' case. Pl.'s Reply. at

---

[8] It is unclear to the Court whether the withheld recordings would have constituted *Brady* evidence. In his briefing, Plaintiff makes little more than a bald assertion of a *Brady* violation; however, in Plaintiff's most recent filing, Plaintiff attached an affidavit from his former attorney submitted in the United States District Court for the Eastern District of Michigan which appears to allege that the non-disclosure of these recordings was a *Brady* violation. *See* Pl.'s Supp. Reply, at 34, ¶ 6.

5.  The Court fails to see how this Report about a prosecution conducted in an entirely different USAO and an entirely different state—Alaska—has any relevance to the alleged pattern of misconduct in the Michigan USAO that Plaintiff claims the public has an interest in establishing.

Plaintiff also points to two cases that discuss past prosecutorial misconduct in the Michigan USAO, *United States* v. *Koubriti*, 336 F.Supp.2d 676 (E.D. Mich. 2004) and *Jefferson v. United States*, 730 F.3d 537 (6th Cir. 2013).  In *Koubriti*, the court discusses in detail how, around 2003, the prosecution repeatedly failed in its obligation to turn over many documents and information which were clearly and materially exculpatory.  The court concludes that this conduct rose to the level of a pattern of misconduct *in that case.*  336 F.Supp.2d at 680-81.  In *Jefferson*, the Court discusses how, in March 2004, Assistant U.S. Attorney Richard Convertino, one of the prosecutors investigated in the *Koubriti* case, and also the prosecutor in *Jefferson* and several of Jefferson's co-defendants' cases, was investigated by the Michigan USAO and determined to have failed to disclose pertinent information to the defense, among other violations.  730 F.3d at 542.

While Plaintiff is correct that *Jefferson* and *Koubriti* show that there have been past instances of prosecutorial misconduct within the Michigan USAO, Plaintiff fails to show or even allege a link between this prior misconduct and his own case such as would establish a pattern of misconduct.  Plaintiff indicates in his Opposition that Daniel Lemisch and Michael J. Buckley were the two prosecutors from the Michigan USAO who tried the case against Plaintiff.  Pl.'s Opp'n. at 4.  Plaintiff does not allege that Convertino or any of the prosecutors involved in either *Koubriti* or *Jefferson* were directly involved in Plaintiff's case such that a reasonable person could infer a pattern of misconduct.  Furthermore, the investigations into the Michigan USAO were conducted in 2003 and 2004, while Plaintiff's case was prosecuted from 2007 to 2009.  *See*

16

*id.* These investigations were also specific as to prosecutorial misconduct in those cases. Thus, Plaintiff's attempt to associate his case with this prior misconduct by relying on temporal proximity also fails. Simply citing *Jefferson* and *Koubriti* does not establish a pattern of misconduct within the Michigan USAO that would be revealed by these recordings and in which the public would have a significant interest. The Court finds that Plaintiff has failed to establish that any alleged *Brady* violation in his criminal case would be more than an isolated incident if such a *Brady* violation had occurred.

Accordingly, the Court finds that Plaintiff has failed to meet his burden of producing evidence of a significant public interest. *Favish*, 541 U.S. at 175 (holding that a nexus is required between the requested documents and the purported public interest served by disclosure). In the absence of any public interest in disclosure, the countervailing interest in privacy defeats Plaintiff's FOIA request. *See Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." (citing *Reporters Comm.*, 489 U.S. at 780)).

### C. *Vaughn* Index and Plaintiff's Discovery Request

Plaintiff's final argument is that Defendants' invocation of Exemption 7(C) cannot be upheld without Defendants first justifying their application of Exemption 7(C) for each withheld document in a *Vaughn* index, and releasing all reasonably segregable materials. Pl.'s Opp'n. at 11, 17. Plaintiff further argues that because Defendants have not produced a *Vaughn* index, he is entitled to discovery and requests the EOUSA "to provide him with the dates of each of the withheld audiotapes as this may help in establishing whether or not the tapes contain exculpatory evidence." Pl.'s Cross-Mot. at 4-5.

17

Plaintiff is incorrect that Defendants needed to produce a *Vaughn* index justifying their withholding of specific documents or specific parts of documents because, as the Court has found, Defendants did not even need to conduct a search in response to Plaintiff's FOIA request. All of the records Plaintiff requested only contained information implicating third parties in law enforcement investigations and were thus exempt from disclosure under Exemption 7(C).  *See Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) ("Because a search for records pertaining to specific individuals . . . would have added only information that we have concluded is protected by Exemption 7(C), it follows that the FBI was correct in declining to search for such documents."); *SafeCard Services*, 926 F.2d at 1206 (holding that agency may determine that disclosure of the identity of individuals mentioned in law enforcement files is categorically exempt as an unwarranted invasion of privacy); *cf. Burke v. Dep't of Justice*, No. 96-1739, 1999 WL 1032814, *5 (D.D.C. Sept. 30, 1999) (explaining that "[a]s to the portion of the request seeking investigative law-enforcement files, the agency may simply assert a categorical Glomar response," i.e. "refuse to confirm or deny whether such files exist as to the third party.").  Since Defendants provided a declaration explaining in detail why the records Plaintiff requested are categorically exempt from disclosure pursuant to Exemption 7(C), the Court is satisfied that Defendants met their burden under FOIA.  Likewise, the Court also finds that Defendants were not required to release all reasonably segregable material because the records requested contained only conversations between third parties and such records are exempt under Exemption 7(C).

As for Plaintiff's request for discovery, "discovery is not favored in lawsuits under the FOIA."  *Judicial Watch, Inc. v. Dep't of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (citing *Nation Magazine, Wash. Bureau*, 71 F.3d at 892); *see also Canning v. Dep't of Justice*, No. 11-

1295, 2013 WL 1333422, *1 (D.D.C. April 2, 2013) ("discovery in general is unavailable in [FOIA] actions." (citing *Wheeler v. CIA*, 271 F.Supp.2d 132, 139 (D.D.C. 2003)); *Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011), *aff'd* 485 Fed.Appx. 439 (D.C. Cir. 2013) (noting that discovery in FOIA cases is "the exception and not the rule."). "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd* 349 F.3d 657 (D.C. Cir. 2003).

Here, the Court has already established that there was no need for Defendants to submit a more detailed *Vaughn* index along with their declaration, and Plaintiff has not alleged that the Luczynski Declaration was submitted in bad faith.  As to remaining factual disputes, the Court fails to see how any discovery Plaintiff may obtain, and in particular, the specific discovery Plaintiff has requested regarding the dates of the withheld recordings, would change the outcome of the Court's decision.  The fact remains that Plaintiff is requesting third-party records exempt from disclosure under Exemption 7(C).  Moreover, the Court has already explained that seeking to expose a single *Brady* violation does not constitute a significant public interest sufficient to outweigh the privacy interests at stake.  Thus, to the extent that Plaintiff seeks discovery to establish the exculpatory nature of the recordings, this discovery pertains to facts that would not alter the Court's decision.  Accordingly, the Court denies Plaintiff's request for discovery.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Defendants have properly invoked Exemption 7(C) to justify their refusal to conduct a search in response to Plaintiff's FOIA request.  The Court also finds that neither discovery nor a *Vaughn* index are necessary or appropriate in this case.  Accordingly, Defendants' [22] Motion to Dismiss or, in the alternative,

for Summary Judgment is GRANTED and Plaintiff's [29] Cross-Motion for Summary Judgment

is DENIED.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE